**In Re the Marriage of Patricia Louise YOUKER, Petitioner, Respondent,**

v.

**Nick Allen YOUKER, Appellant.**

**No. C5–02–1878.**

Court of Appeals of Minnesota.

May 20, 2003.

Elizabeth Ann Schading, Barna, Guzy & Steffen, Ltd., Minneapolis, MN, for respondent.

Timothy D. Lees, Hennek Klaenhammer & Lees, P.A., Roseville, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, KLAPHAKE, Judge, and SHUMAKER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

In this maintenance-modification dispute, appellant argues that the district court abused its discretion by converting his temporary obligation to a permanent obligation, contending that (a) respondent failed to show a substantial change in circumstances rendering the existing maintenance award unreasonable and unfair and (b) neither the record nor the findings support the district court's award of permanent spousal maintenance. Because the record does not contain facts sufficient to show a substantial change in circumstances, we reverse.

## FACTS

Appellant Nick Youker and respondent Patricia Youker were married in 1981, and a petition to dissolve the marriage was filed in Anoka County District Court in 1997. In 1998, the amount and duration of spousal maintenance was litigated in a two-day trial. The district court found that although respondent had skills and education that would be useful in a job

search, she needed three more years of education and training to obtain better employment and to earn a higher income. On April 1, 1999, the court entered the dissolution decree and awarded spousal maintenance of $1,000 per month for three years. Neither party appealed the initial award of spousal maintenance.

During the marriage, respondent was a homemaker, cared for the parties' son, earned a two-year degree in fashion merchandising and marketing, and worked in lower-paying positions than that of appellant. During the dissolution proceedings, respondent was employed as a visual specialist, arranging mannequins and merchandise displays, at Kohl's department store.

After the dissolution, respondent continued her employment with Kohl's and received periodic raises. She considered enrolling in an interior-design program at one college, but she ultimately chose not to do so. She determined that the programs at that and other institutions were inconvenient in either distance or scheduling since they did not offer a sufficient number of evening or weekend classes. Respondent chose not to attend classes full-time because the cost of tuition, coupled with the reduction of earnings, made attending a full-time program infeasible. She also discovered that interior-design programs require an additional four-year apprenticeship after completion, and her salary during that apprenticeship would be less than her current earnings. Consequently, respondent did not enroll in any degree-granting program during the temporary maintenance period, though she did enroll in a correspondence course to enhance her employment as a visual specialist. She had completed half of that course by the March 2002 hearing.

Similarly, respondent did not search for any other employment "other than looking in the newspaper." Instead, she continued in the Kohl's position because she was "not interested in anything else." Although she investigated higher-paying positions at Kohl's and HOM Furniture, she did not apply for those positions because they required travel at least one week per month. Because she had no one else to care for the parties' minor son, she viewed as unacceptable any job that required overnight travel.

On March 4, 2002, respondent moved to modify the duration of the maintenance award from temporary to permanent. Respondent conceded that her reasons for requesting the modification were the same as those given during the court's initial dissolution hearings. Those reasons included the fact that she is not currently self-supporting and that she spent the majority of a long-term marriage as homemaker and primary caretaker of their child.

On June 28, 2002, the district court issued its order finding that a change in circumstances warranted modification of the temporary maintenance award. In explaining its decision, the district court cited respondent's investigation into educational opportunities and her consideration of employment opportunities. In particular, the court noted that if respondent had (1) stayed at her current position and attended one night class per semester, her program would have taken more than three years to complete; (2) left her employment to attend classes full-time, she would have been in a worse financial position than at present; and (3) pursued other available positions, they would have required her to travel. The district court concluded that respondent's "reasoned decision" not to pursue further education or employment constituted "reasonable efforts toward rehabilitation." It then made a permanent maintenance

award of $500 per month, to continue until respondent's remarriage or death or until further order of the court. This appeal follows.

## ISSUE

Did the district court abuse its discretion in finding that a significant change of circumstances warranted modifying the award from temporary to permanent spousal maintenance?

## ANALYSIS

■ Maintenance awards are not altered on appeal unless the district court abused its wide discretion. *Prange v. Prange*, 437 N.W.2d 69, 70 (Minn.App. 1989), *review denied* (Minn. May 12, 1989). A district court may initially grant a maintenance order for either spouse if it finds that the spouse seeking maintenance lacks the attributes found in Minn.Stat. § 518.552, subd. 1 (2002). A district court shall consider all relevant factors before ordering maintenance. Minn.Stat. § 518.552, subd. 2 (2002); *Carrick v. Carrick*, 560 N.W.2d 407, 410 (Minn.App.1997). A district court's findings of fact will not be set aside unless those findings are clearly erroneous. Minn. R. Civ. P. 52.01.

■ After the district court issues a spousal-maintenance award, it has broad discretion to determine whether to later modify that award. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). A party moving to modify an award of maintenance bears the burden of showing a substantial change of circumstances since the last time maintenance was modified, or if maintenance has not been modified, since it was originally set. Minn.Stat. § 518.64, subd. 2 (2002); *Gorz v. Gorz*, 552 N.W.2d 566,

569 (Minn.App.1996). The moving party must then demonstrate that these changed circumstances render the original award unreasonable and unfair. *Hecker v. Hecker*, 568 N.W.2d 705, 709 (Minn.1997). The amount and duration of a modified maintenance award that extends the duration of an existing award must be supported by the district court's findings. *Santillan v. Martine*, 560 N.W.2d 749, 752 (Minn.App. 1997). A district court abuses its discretion when it resolves a matter in a manner that is "against logic and the facts on record." *Prahl v. Prahl*, 627 N.W.2d 698, 702 (Minn.App.2001) (quoting *Rutten*, 347 N.W.2d at 50).

■ After temporary maintenance has been awarded, an obligee generally has the duty to rehabilitate. *Carrick*, 560 N.W.2d at 411 n. 1. From that duty, it follows that the obligee must make reasonable efforts to become self-supporting. *Hecker*, 568 N.W.2d at 710 n. 4; *Nardini v. Nardini*, 414 N.W.2d 184, 198 (Minn. 1987). If, despite the obligee's reasonable efforts, the spouse fails to become fully rehabilitated, that failure may constitute a change in circumstances. *Santillan*, 560 N.W.2d at 752 (citing *Katter v. Katter*, 457 N.W.2d 750, 753 (Minn.App.1990)).

■ The district court clearly erred in finding that respondent's failure to rehabilitate constituted a sufficient change in circumstances. On this record, respondent's mere research into rehabilitation, without further acts, is insufficient to show reasonable efforts to rehabilitate.

Appellant argues that respondent did not "fail" to rehabilitate because she did not sufficiently "attempt" to do so.[1] Considering facts similar to those here, the

---

1. The *Hecker* court's concurring opinion makes a similar conclusion that the recipient spouse's "failure to achieve self-sufficiency appears from the record to be more a failure to make an effort to become self-sufficient than an actual failure to become self-sufficient." *Hecker*, 568 N.W.2d at 710 n. 1.

supreme court reviewed a motion to modify spousal maintenance when a spouse failed to rehabilitate after the durational maintenance period had expired. *Hecker*, 568 N.W.2d at 707–08. The spouse there "chose not to make any serious effort at obtaining vocational training or work experience." *Id.* at 708. The court noted that it is implied that a spouse receiving temporary maintenance must make a good-faith effort to rehabilitate. *Id.* at 710.

Here, respondent failed to make a sufficient attempt to rehabilitate, disregarding the decree's implied duty to pursue (1) further education and (2) better employment. She limited her exploration of educational opportunities to merely "checking" on one institution's interior-design program. Although several institutions offered evening classes, the district court found that respondent could have attended only one evening course per semester. Accordingly, the district court found that if respondent had taken one course per semester, "at this time she would have years left before earning another two-year degree, and would need an extension of spousal maintenance." The court also found that respondent's decision not to attend classes full-time was reasonable, noting that a full-time class load would have resulted in increased debt without any employment income to cover living expenses.

We agree with appellant's argument that these findings are speculative and without basis in the record. The court did not rely upon what actually happened, but instead focused on what could have occurred if respondent had made further attempts to rehabilitate. Despite the duty implied in the dissolution decree, respondent did not take any affirmative steps to enroll in any full-time or evening courses to further her education. Respondent's inaction beyond mere inquiry into potential programs is insufficient to demonstrate the substantial change in circumstances necessary for spousal-maintenance modification. The law prefers that an obligee spouse make reasonable attempts to rehabilitate and fail, rather than do little or nothing and "rely upon the possibility that [the spouse] would continue to receive spousal maintenance." *Hecker*, 568 N.W.2d at 710. Under the terms of the decree, respondent is obligated to make reasonable attempts to rehabilitate, and she may seek a remedy if that attempt fails.

Appellant next argues that respondent's minimal employment search was not sufficient to fulfill her duty to attempt to rehabilitate. In particular, we address respondent's limited search for other employment beyond "looking in the newspaper" and noting management vacancies for which she did not apply. We agree that respondent's attempts to obtain higher-paying employment were inadequate to demonstrate her inability to become self-sufficient. Over the three-year temporary-maintenance period, respondent's mere inquiry into two positions, without her subsequent application for those or any other positions, does not constitute a reasonable effort to rehabilitate. Although the district court found that no evidence exists to show that respondent was qualified for a management position, she had the affirmative duty to pursue better employment. The best way to determine respondent's qualification is for respondent to apply for a position.

The district court mistakenly relied upon *Carrick*, 560 N.W.2d at 410–11 (Minn.App.1997), and *Maurer v. Maurer*, 607 N.W.2d 176, 180–81 (Minn.App.2000), *rev'd on other grounds*, 623 N.W.2d 604 (Minn.2001), in holding that respondent's continued employment at the same full-time position that she held during the mar-

riage did not constitute bad-faith underemployment. *Carrick* and *Maurer* addressed the initial *establishment* of spousal maintenance, while the instant case addresses the *modification* of a maintenance decree. Both of those decisions focused on whether the spouse was "underemployed in bad faith" before the district court had entered the decree of dissolution. *Maurer,* 607 N.W.2d at 180; *Carrick,* 560 N.W.2d at 410. A spouse is not required to search for new employment in the relatively short time between the petition and the dissolution decree. In contrast, this case involves the duty to attempt rehabilitation during the three-year temporary-maintenance period awarded by the decree of dissolution.

## DECISION

Because the district court clearly erred in finding that respondent made a reasonable attempt to rehabilitate, its determination that this case involved a substantial change in circumstances is defective. Therefore, we reverse the award of permanent spousal maintenance.

**Reversed.**