*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1096**

In re the Marriage of
Mary Ellen Block, f/k/a Mary Ellen Jensen, petitioner,
Appellant,

vs.

William Ray Block,
Respondent.

**Filed August 3, 2015
Affirmed
Bjorkman, Judge**

Ramsey County District Court
File No. 62-FA-10-2043

M. Sue Wilson, Amy Yanik Meisel, M. Sue Wilson Law Offices, P.A., Minneapolis, Minnesota (for appellant)

Alan C. Eidsness, Lisa T. Spencer, Henson & Efron, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant-wife challenges a dissolution judgment and related posttrial orders, arguing that the district court abused its discretion by (1) dividing the parties' property

inequitably, (2) denying her motions to reopen the dissolution judgment based on fraud, and (3) awarding her inadequate spousal maintenance. In a related appeal, respondent-husband also challenges the spousal-maintenance award, arguing that the district court (1) applied the wrong legal standard and (2) confused certain assets in determining his ability to pay maintenance. We affirm.

## FACTS

Appellant Mary Ellen Rice[1] and respondent William Ray Block were married in 1985. Throughout the marriage, husband successfully engaged in numerous business ventures, with real-estate enterprises now collectively worth more than $30 million. Wife did not work outside the home, instead maintaining the parties' home and raising their two daughters, who are now adults.

Wife commenced this dissolution action in August 2010. The central focus at the September 2012 trial was the valuation and division of the various businesses. The parties substantially agreed as to the value of the businesses, and that husband owes money to some of his businesses and some of them owe him money. But the parties disagreed about the appropriate allocation of debt owed by three businesses: (1) White Eagle GC LLC, a Wisconsin golf course designed to capitalize on the pending bridge across the St. Croix River from Stillwater, which lacks sufficient cash flow to cover its expenses and owes $4,079,091 to husband (and $2.6 million to MH Mortgage and $1.2 million to the Small Business Administration); (2) Preservation Development LLC, which owns residential golf course lots on or near the White Eagle golf course, lacks

---

[1] The district court granted wife's request to change her surname from Block to Rice.

2

sufficient cash flow to cover its expenses, and owes husband $2,014,239; and (3) MH Mortgage Corp., the sole significant asset of which is the $2.6 million note from White Eagle.

On February 7, 2013, the district court entered judgment dissolving the parties' marriage and dividing their property. The district court awarded husband all of the businesses except MH Mortgage, which it awarded to husband and wife in equal shares, and awarded husband and wife each a one-half interest in the debts Preservation Development and White Eagle owe to husband and MH Mortgage. The district court found that it is uncertain whether Preservation Development and White Eagle will ever repay the debts, and reasoned that an equal distribution gives both parties an incentive to collect and fairly distributes the "substantial risk associated with these assets." As a final property settlement, the district court ordered husband to pay wife a cash equalizer of $3,310,946, with interest, in several lump sums over approximately four years. And the district court made findings regarding the parties' reasonable monthly expenses and wife's employment prospects but reserved the issue of spousal maintenance pending final payment of the property equalizer.

Both parties moved to amend the dissolution judgment.[2] Wife sought to add specific language protecting her interest in the debts owed by White Eagle and Preservation Development from possible manipulation by husband, as sole owner of the businesses. Husband principally sought to amend the valuations of several businesses

---

[2] This case involves extensive posttrial motion proceedings. For the sake of brevity, we focus only on those facts necessary to our analysis of the issues presented on appeal.

3

and the equalizer payment.  On July 31, the district court substantially granted the parties' motions, amending the dissolution judgment to include the requested protective language and reducing the equalizer payment to $1,273,111.

Wife subsequently moved for an award of spousal maintenance.  While that motion was pending, wife sought relief from the judgment on the basis of newly discovered evidence and fraud and because prospective application of the dissolution judgment was no longer equitable.  Wife argued that husband newly testified at a November 2013 deposition that the funds he provided to Preservation Development were not loans but capital contributions.  The district court conducted a hearing on both motions on February 20.

On March 31, while the motions were under advisement, wife filed another motion seeking relief from the judgment on the basis of fraud and evidence discovered after the February 20 hearing, namely the 2012 and 2013 tax returns for Preservation Development, White Eagle, and MH Mortgage.  The district court stayed the motion and any further motions or discovery until after it decided the pending motions.

On May 19, the district court denied wife's motion for relief from the judgment, finding that she did not establish entitlement to relief based on newly discovered evidence or fraud "as relating to the classification of the parties' notes in Preservation Development, LLC and White Eagle."  But the district court found that the substantial decrease in the property equalizer made reservation of spousal maintenance unreasonable and unfair and awarded wife rehabilitative spousal maintenance of $8,000 per month, commencing March 1.

4

Wife thereafter sought permission to pursue her March 31 motion and to conduct additional discovery. The district court denied wife's requests. Wife appealed; husband filed a notice of related appeal.

**D E C I S I O N**

**I.** **The district court did not abuse its discretion in dividing the parties' property.**

A district court has broad discretion in a dissolution proceeding to make a just and equitable division of the parties' property. *See* Minn. Stat. § 518.58, subd. 1 (2014); *Gottsacker v. Gottsacker*, 664 N .W.2d 848, 852 (Minn. 2003). We view the record in the light most favorable to the district court's findings and defer to the district court's credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). We will affirm the district court's decision if it has "an acceptable basis in fact and principle, even though we might have taken a different approach." *See Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002).

Wife argues that the district court abused its discretion by dividing the debts of Preservation Development and White Eagle equally between the parties while awarding the businesses to husband. She contends that this unfairly eliminates any incentive for husband to have the businesses repay those debts and that the district court should have instead credited husband with the debts and ordered him to pay her cash for half of the amount owed. The district court found wife's proposal inequitable. That determination, which wife did not timely challenge in her posttrial motions, finds ample support in the record.

5

It is undisputed that $6,093,330 of the parties' money went into Preservation Development and White Eagle. It is also undisputed that at the time of trial these marital funds were documented as loans from husband to the two businesses. And it is undisputed that, no matter how the funds are designated in the business records or tax returns, there is a substantial risk that the two businesses will not repay the loans.

The disposition wife urges would place all of this risk on husband. The district court declined to do this, instead opting to divide the financial burden associated with the risk equally but to maximize the potential that the debts would be repaid by awarding the businesses solely to husband, who has demonstrated business acumen. While this does not represent the only possible division, it is a reasoned way to equitably resolve a difficult issue. We conclude that the district court did not abuse its discretion by treating the funds in question as speculative debts, the risk and reward of which should be shared equally between the parties.

**II.     The district court did not abuse its discretion in denying wife's motions to reopen the judgment due to fraud.**

A district court may relieve a party from a dissolution judgment and order a new trial if the other party committed fraud or if prospective application of the judgment is no longer equitable. Minn. Stat. § 518.145, subd. 2 (2014). If the moving party fails to make a prima facie showing of fraud or inequity, the district court may summarily dismiss the motion. *See Thompson v. Thompson*, 739 N.W.2d 424, 428 (Minn. App. 2007). We review for abuse of discretion the district court's decision whether to reopen the dissolution judgment. *Id.*

6

Wife argues that the district court abused its discretion by denying her February and March 2014 motions for relief from the amended dissolution judgment and for leave to conduct additional discovery regarding husband's alleged misconduct. Both motions allege that husband committed fraud against wife and fraud on the court by asserting at trial that Preservation Development and White Eagle owe him money when the funds in question are actually capital contributions. We are not persuaded. Husband consistently testified at trial that the funds in question, while designated as loans to the business in the business records, probably should not be considered debts and, regardless of label, are "uncollectable." Similarly, husband consistently testified, and both wife and the district court were aware, that husband frequently moves assets between his businesses and reclassifies funds in accordance with his business needs—part of a business strategy that had proven highly successful. Indeed, the district court accounted for the risk that this strategy poses to wife's interest by granting wife's motion to add protective provisions to the dissolution judgment.[3]

In sum, the district court awarded wife a speculative but real and actionable interest in half of the $6,093,330 in marital funds provided to White Eagle and Preservation Development. Nothing in the record indicates that husband fraudulently misrepresented the status of the funds during or after trial, and husband continues to acknowledge that he has a duty to pay wife her half if the debts are repaid. On this record, we conclude the district court did not abuse its discretion by denying wife's

---

[3] The protections include reporting requirements, limitations on husband's ability to take fees or salary out of the companies, and wife's right to engage a receiver at husband's expense. Wife has not requested a receivership.

motions for relief from the amended dissolution judgment due to fraud or prospective inequity and declining to conduct any further hearings or permit any further discovery on that claim.

**III.    The district court did not abuse its discretion in awarding spousal maintenance.**

We will not reverse a district court's decision regarding spousal maintenance unless the court abused its discretion by improperly applying the law or making clearly erroneous findings. *Melius v. Melius*, 765 N.W.2d 411, 414 (Minn. App. 2009). And we will not disturb factual findings concerning spousal maintenance unless they are "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Hemmingsen v. Hemmingsen*, 767 N.W.2d 711, 716 (Minn. App. 2009) (quotation omitted). "But whether the district court applied the correct legal standard is a question of law, which we review de novo." *Thompson*, 739 N.W.2d at 430.

The parties challenge various aspects of the spousal-maintenance award—the legal standard applicable to wife's maintenance request, the amount awarded, and the retroactive application of the award.[4] We address each of these issues in turn.

---

[4] Wife notes that the award is designated as "temporary" and recites the principle that "uncertainty" justifies a permanent award, but does not substantiate a claim of error based on that designation. Accordingly, any such argument is waived. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971). Moreover, the district court labeled the award as "temporary" because the parties' circumstances will likely change after husband makes the final payment of the property equalizer, and expressly permitted either party to "request review" of the maintenance award at that point.

**Legal standard**

Husband argues that the district court should have summarily rejected wife's spousal-maintenance motion because it was an untimely request to amend the original dissolution judgment. We disagree. The district court initially reserved the issue of maintenance at wife's request because of the "extent of the parties' marital estate and resulting property distribution and cash equalizer," which was originally set at $3,310,946. Wife agrees that the interest from this amount would have been sufficient for her to meet her needs independently. The district court subsequently reduced the cash equalizer by more than half, but did not award spousal maintenance or amend the finding that it is appropriate to reserve maintenance. Within one month, wife moved for spousal maintenance.

Wife sought spousal maintenance on the ground that "there has been a substantial change of circumstances which makes the [amended dissolution judgment], specifically the reservation of spousal maintenance to [wife], unreasonable and unfair." And she expressly invoked the spousal maintenance-modification statute, Minn. Stat. § 518A.39, subd. 2 (2014), in support of her maintenance request. The district court applied that standard in awarding maintenance.

A district court may modify the terms of any "order respecting maintenance" if a substantial change in circumstances renders the terms of that order unreasonable or unfair. Minn. Stat. § 518A.39, subd. 2(a). While this case does not present the usual scenario under which a modification occurs, the circumstances fall within the plain language of the statute. And husband does not identify any reason that the district court

9

could not modify the existing order reserving spousal maintenance until husband pays the property equalizer in full. Accordingly, we conclude that the district court did not err by considering wife's motion as a request to modify that order.

**Amount**

Both parties challenge the amount of the award. We turn first to wife's arguments. She contends that the award is insufficient because the district court improperly reduced her monthly living expenses from $18,855 to $10,000. We disagree. The district court found in the original dissolution judgment that wife has reasonable monthly expenses of $10,000. Wife did not timely challenge that finding. And the finding, which is based on reductions for redundant credit card costs, improper allocations for the parties' adult children, and expenses that exceeded the marital standard of living, has ample support in the record.

Wife next argues that the district court abused its discretion because an $8,000 monthly maintenance award leaves her with at least a $2,000 monthly shortfall. We are not persuaded. The district court determined that "it is fair and appropriate for a portion of [wife]'s budget to be met through part time employment or the equalizer money she has received and will receive." This determination is consistent with the unchallenged initial findings that wife is healthy and educated and able to work though unlikely to earn more than $24,000 per year, and the undisputed evidence that wife's property settlement will provide her substantial interest income. Similarly, the district court has the discretion to reduce the award based on tax considerations but is not required to do so. *See Maurer v. Maurer*, 623 N.W.2d 604, 607 (Minn. 2001) (holding that a "bright-line

10

rule would leave little, if any, room for the exercise of discretion"). On this record, we discern no abuse of discretion in setting spousal maintenance below wife's reasonable monthly expenses.

Husband, in turn, asserts that the district court confused certain assets in determining his cash flow and, as a result, clearly erred in finding that he is able to pay $8,000 in monthly maintenance. The finding at issue provides:

> [Husband]'s cash flow has changed significantly since trial. The Court previously found that [husband]'s monthly cash flow included an anticipated monthly expense of $9,500 attributable toward amortizing *the SBA loan*. However, [husband] has not been making this monthly payment and there is no evidence that he will be making that payment in the near future. Therefore it is appropriate to remove the amortization of *the SBA loan* from [husband]'s monthly expenses which frees up that amount for payment of temporary spousal maintenance. [Husband] therefore has the ability to pay spousal maintenance.

(Emphasis added.) Wife essentially agrees, and we are convinced, that the district court confused White Eagle's SBA loan with White Eagle's MH Mortgage loan in this finding. We also observe that the record is not entirely clear as to whether husband is actually paying the $9,500 toward amortization of the MH Mortgage loan, as he testified he would have to do. But neither of these considerations undermines the district court's ultimate determination that husband has the ability to pay $8,000 in monthly maintenance.

The district court found that husband's monthly net cash flow, after accounting for taxes and the $9,500 obligation in question, is $21,500. Husband does not challenge this finding. He argues only that he will not be able to pay maintenance "given the large outstanding balance on the equalizer payment which is paid from his cash flow." We are

11

not persuaded. First, even after paying his monthly expenses of approximately $6,000, husband enjoys approximately $15,500 each month in net cash flow from which he can pay spousal maintenance and save toward paying the remainder of the cash equalizer. Second, the district court expressly contemplated that husband would not be paying the cash equalizer exclusively or even mostly from cash flow. Rather, the district court observed that husband has numerous assets, including more than $5 million in cash held in his businesses, that he could use to pay the equalizer. On this record, the district court did not clearly err in finding that husband has the ability to pay the $8,000 monthly maintenance obligation.

**Retroactivity**

Finally, wife argues that the district court abused its discretion by making the award retroactive to March 1, 2014, rather than the date of the original dissolution judgment. We disagree. The maintenance-modification statute provides that a modification of maintenance "may be made retroactive only with respect to any period during which the petitioning party has pending a motion for modification but only from the date of service of notice of the motion on the responding party." Minn. Stat. § 518A.39, subd. 2(e) (2014). Wife filed her modification motion in August 2013, the district court heard the motion in February 2014, and it granted the motion and awarded maintenance in May. Making that award retroactive to March 1 was well within the district court's discretion; making it retroactive to the date of the original dissolution judgment was not. *See Lee v. Lee*, 775 N.W.2d 631, 643 (Minn. 2009) (stating that "the

12

choice of retroactive date is committed to the discretion of the district court, as long as the date chosen is within the statutory limits").

**Affirmed.**