HILDA HELLMAN v. MARTIN HELLMAN.

84 N. W. (2d) 367.

August 9, 1957—No. 37,105.

██ 

*George N. Guttmann* and *Charles Rubenstein,* for appellant.
*Hiram Z. Mendow,* for respondent.

MURPHY, JUSTICE.

Appeal from a judgment of divorce of the district court entered June 28, 1956, and from an order of said court denying certain parts of the defendant's motion to modify said judgment.

Hilda and Martin Hellman were married on November 8, 1937. They have three children from the marriage aged 13, 13, and 10. Sometime prior to 1955, the marriage relationship began to disintegrate. In December 1954, Martin Hellman was informed by letter from his wife's attorney that she desired to obtain a divorce. The letter also made suggestions concerning a property settlement and support arrangements. On February 9, 1955, a divorce action was commenced by Hilda Hellman. On the same date a stipulation was executed between the plaintiff and the defendant for purposes of "settling all questions of property rights, support money, alimony, care and custody of children, and support of children, and for the purpose of eliminating controversy, with reference thereto." The stipulation included provisions whereby the defendant, Martin Hellman, would pay $125 per week to the plaintiff, Hilda Hellman, for the support of the minor children; plaintiff would receive title to the home and furnishings of the parties which she could sell under certain conditions; she would retain her automobile; she would receive $5,000 upon execution of the stipulation and $25,000 as permanent alimony payable in ten annual installments; and after ten years she would receive a fully paid up $10,000 life insurance policy on the defendant's life naming her as beneficiary.[1] The defendant, Martin Hellman, was to receive all his personal property in their home, including all his work tools and equipment.

---

[1]As security, the plaintiff was to retain possession of certain existing in-insurance policies with a $40,000 face value and receive documents providing that the defendant may not borrow on such policies or change beneficiaries for 10 years.

The divorce decree was entered on June 28, 1956.[2] It incorporated all the provisions of the stipulation *except* that Mrs. Hellman was authorized to retain the work tools and equipment, to sell them, and to apply the proceeds as a credit to alimony due or thereafter to become due. The defendant was substantially in default on the payment of temporary alimony and support money as provided by order of the court dated June 21, 1955. The decree was entered in a default proceeding. No answer was entered on behalf of the defendant nor did he appear to contest the action. Some of the tools were thereafter sold by the plaintiff.

In July 1956, the defendant moved to modify the divorce decree and obtained an order temporarily restraining the plaintiff from disposing of the home of the parties or the tools of the defendant. In support of this motion the defendant alleged that the stipulation was entered through mistake; that the provisions in the decree concerning property were different from the stipulation; that the decree was unfair and did not reflect the intent of the parties; and that the defendant's financial status had materially changed. In August 1956, the plaintiff sought to have the defendant held in contempt of court for failing to make support payments ordered in the divorce decree.

The two motions were heard together. At the beginning of the hearing the court stated that it would "not consider the reopening of the property settlement," and that it would consider only the question of the support payments for the children and the question concerning the tools. On September 28, 1956, the trial court ordered that the plaintiff's motion to hold the defendant in contempt be denied. As to the defendant's motion, the trial court (1) dismissed the restraining order, (2) reduced the support payments for the three children from $125 per week to $67.50 per week, (3) denied the request for amendment concerning the tools, (4) applied the $2,750 received by the plaintiff from the sale of the tools as a credit on the amount owed by the defendant under the property agreement, and (5) ordered the immediate return to the defendant of all tools which were then in the possession of the plaintiff.

---

[2]The decree was amended on October 24, 1956, solely to correct the title to the homestead.

The memorandum of the trial court reasoned that insofar as there was any mistake it was unilateral and the defendant is bound by the decree to which he agreed, but that the defendant is entitled to an amendment of the terms of the decree. The trial court cited Hafner v. Hafner, 237 Minn. 424, 54 N. W. (2d) 854; Elsen v. State Farmers Mutual Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652; Olson v. Shephard, 165 Minn. 433, 206 N. W. 711; C. H. Young Co. v. Springer, 113 Minn. 382, 129 N. W. 773. The memorandum termed the reduction in support payments as "appropriate under the circumstances"; indicated that the defendant's "conduct and the things he said justified the plaintiff in selling [the] tools and justified the Court in making the finding that it did"; and stated that the defendant was not guilty of contempt even though he was in considerable default.

The contentions of the defendant (appellant) before this court are: (1) That the trial court abused its discretion in failing to allow evidence on the issue of whether or not to modify the divorce decree with regard to alimony payments; (2) that the conduct of the parties between the signing of the stipulation and the granting of the divorce did not constitute a subsequent binding agreement which would justify the action of the plaintiff whereby she sold the tools contrary to the stipulation; and (3) that, in granting the decree of divorce, the court "should have rejected the stipulation and accepted only the portions as might have been advisable under the circumstances and then ordered a division of the property and award of alimony based upon its sound judicial discretion as warranted by the facts" after determining whether the provisions of the stipulation were "fair, just and equitable."

The plaintiff argues (1) that in the interval between the filing of the motion for modification and the entry of the decree of divorce there had been no substantial change in the defendant's circumstances to warrant revision of the judgment; (2) that the trial judge did in fact hear testimony relating to the change in circumstances and this was reflected also in his decision and memorandum; (3) that there is sufficient evidence to establish that the trial judge did not abuse his discretion in refusing to modify the alimony payments and in permitting the sale of certain tools as a credit against unpaid alimony; and (4) that the observation by the trial judge that he "will not consider the reopening

of the property settlement in this case" cannot be used to contradict the order of the court from which this appeal was taken.

■ At the time of a divorce, the trial court may, subject to statutory limitations, make such disposition of property acquired by the parties during coverture and such award of alimony[3] as shall appear just and equitable considering all the circumstances of the case. M. S. A. 518.58 and 518.60. After an order or decree for alimony or support money has been entered, the court may, from time to time on the petition of either party, revise or alter such order respecting the amount of alimony or support to be paid, and it may make any other order respecting these matters which might have been made in the original action with certain exceptions not relevant here. § 518.64.

■ It rests in the sound discretion of the trial court to initially determine the amount of alimony.[4] Likewise, a petition to modify the alimony provisions of a divorce decree is addressed to the sound discretion of the court, and it will be granted only upon clear proof of facts showing that the circumstances of the parties have been so substantially changed since the divorce that modification is equitable. The decision of the trial court in these matters will be reversed only for an abuse of discretion.[5]

■ Where the divorce decree has adopted a stipulation agreed upon by the parties, such stipulations are purely advisory to the court and do not limit its discretionary power to determine whether a future change in circumstances warrants revision, but they are entitled to considerable evidentiary weight which will make the court more reluctant to modify the original decree than it would otherwise be,[6] particularly where the parties have had the benefit of able counsel in so stipulating.[7]

---

[3]The award of alimony to the wife may not, however, exceed one-half of the husband's future earnings and income. M. S. A. 518.60. This aspect has not been argued and the record is inadequate to make a determination.

[4]Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. (2d) 762; Botkin v. Botkin, 247 Minn. 25, 77 N. W. (2d) 172.

[5]Mark v. Mark, 248 Minn. 446, 80 N. W. (2d) 621; Botkin v. Botkin, *supra.*

[6]Mark v. Mark, *supra;* Kate v. Kate, 234 Minn. 402, 48 N. W. (2d) 551.

[7]See, Botkin v. Botkin, *supra;* Warner v. Warner, 219 Minn. 59, 17 N. W. (2d) 58.

Stipulations of this kind are deemed to have been entered into in view of the authority conferred upon the court by statute and they are merged into the judgment, but they are not contracts which bind the court or preclude it from making such changes as the changes in circumstances justify. Mark v. Mark, *supra*.

█ We cannot say that the trial court abused its discretion as the defendant contends. There is no clear proof that the decree, as modified, is so inequitable that the trial court erred in refusing to grant to the defendant all the relief he requested. The trial court did in fact receive testimony relating to the financial condition of the defendant at the time the stipulation was signed and relating to the changes in his financial circumstances thereafter. Although it does not appear from the record that the present financial condition of the defendant is very promising, we believe there is ample evidence to support the action of the trial court. The order modifying the divorce decree did give the defendant some relief. Furthermore, the testimony of the defendant suggests that he was less than frank in disclosing his financial condition. The defendant's own testimony also supports the finding of the trial court that the defendant's conduct justified the plaintiff in selling the tools in dispute.

When the stipulation was signed in February 1955, defendant was treasurer of Hellman's Majestic Cleaners & Launderers, Inc., which was owned by the defendant and his parents. The defendant's income was $7,000 per year. This corporation has since been declared bankrupt. The business has been reorganized as Hellman's Majestic Cleaners Corporation, and the defendant is its president. His income is approximately the same as he had previously received. The defendant states, however, that the new corporation has already lost approximately $6,000 and that he has returned most of his salary to the corporation as a loan to keep the business alive. He attributes the losses of both the bankrupt corporation and the new corporation to the fact that his father has been ill and he evidently cannot successfully run the business without his father's assistance. The only significant asset the defendant lists is $6,220 owed to him by the new corporation which he is unable to collect at the present time. He lists liabilities of $50,645, leaving a net deficit of approximately $44,000.

This testimony might suggest that the defendant has neither the assets nor expected earning capacity to satisfy the property settlement. However, the cross-examination of the defendant cast considerable doubt on whether the amount of the liabilities claimed by the defendant actually existed. The defendant claims he owes $50,000 to Niles Canfield, a neighboring businessman, who lent him that amount because "he just felt sorry" for him. Yet the testimony of the defendant indicates that he was not sure whether the name of his friendly creditor is Mr. Niles or Niles Canfield, and the defendant contradicts himself in stating what portion of the $50,000 had been borrowed prior to the signing of the stipulation in 1955. The testimony of the defendant on cross-examination is as follows:

"Q. At the time of the proceedings for the divorce in this case, you owed Mr. Niles the same amount of money?

"A. I did not. You mean at the original stipulation?

"Q. How long have you owed Niles this money?

\* \* \* \* \*

"A. Since 1955. Not all of this money. I owed Mr. Niles $15,000.

"The Court: I thought his name was Niles Canfield.

"Mr. Mendow: Niles Canfield, I am sorry.

"The Court: You owed him how many thousands?

"The Witness: Well, it was given to me once, $10,000, and then $5,000. It has been given to me over a period of years. The last moneys I received from him, which was $12,000, was on April 13, 1956.

"By Mr. Mendow:

"Q. Well, isn't it a fact that in June of 1955 you owed him $30,000?

"A. That is correct."

The defendant's explanation of why a neighbor would loan him $50,000 without security may well have strained the credulity of the court.

"Q. Why did this man loan you all this money without security?

"A. Believe me, that is a good question. I can't figure that one out either.

"Q. Is he related to you?

"A. No, he is not, he just felt sorry for me."

The trial judge could have rejected the Canfield story. At any rate, he was in a better position to weigh the credibility of the witness than we are. Even if the Canfield story is believed, most of the defendant's financial problems existed when the stipulation was signed. He already had borrowed at least $30,000, and his father was ill and unable to actively manage the business.[8] There is no evidence of overreaching on the part of the plaintiff or her attorney at the time of the signing and the defendant was represented by counsel at that time. We do not believe, under the circumstances, that the stipulation, as adopted by the court, was so unfair, or that the circumstances have so substantially changed, that the trial court abused its discretion in refusing to give the defendant all that he sought.

Regarding the tools, we do not believe that the trial court abused its discretion by modifying the stipulation before adopting it as part of the decree. The modification merely authorized the plaintiff to sell certain tools and apply the proceeds to satisfy unpaid alimony. Furthermore, the defendant admits that he "consented to the sale of those tools in the heat of excitement one day to have peace and harmony," although he now claims to have changed his mind the next day. The defendant claims to have been "surprised" that the decree had been entered authorizing the sale of the tools. His only explanation for the surprise, however, was that he was not notified and did not know whether his attorney had put in an answer to the complaint seeking divorce. At that point the trial court, who was questioning the defendant, stated: "Now you are saying things that are ridiculous. You will spoil the whole story you have been telling if you talk any more along that line." From an examination of the entire record, including the equivocal and inconsistent statements of the defendant, we do not think the trial court abused its discretion in refusing to modify it to the extent the defendant asked. Respondent is allowed $200 attorney's fees in this court.

Affirmed.

---

[8]In September 1956 the defendant testified that his father had been stricken ill two years earlier. The stipulation was signed in February 1955.