In re the Marriage of Dennis Earl HECKER, petitioner, Appellant,

v.

Sandra K. HECKER, Respondent.

No. CX–95–1841.

Supreme Court of Minnesota.

Sept. 11, 1997.

Rehearing Denied Oct. 31, 1997.

Edward Winer and Susan C. Rhode, Moss & Barnett, P.A., Minneapolis, James H. Gilbert, Meshbesher & Spence, Ltd., Minnetonka, for Appellant.

Michael Ormond, Ormond Law Offices, Minneapolis, for Respondent.

## OPINION

KEITH, Chief Justice.

This spousal maintenance modification proceeding focuses on the attempts of a temporary maintenance recipient to obtain a permanent award. When, after a series of proceedings in the district court and the court of appeals, Sandra K. Hecker was awarded permanent spousal maintenance in the monthly amount of $1,375, we granted the petition of Dennis E. Hecker for further review to address the exercise of the trial court's discretion in recasting Dennis Hecker's temporary spousal maintenance obligation as permanent and increasing it. We affirm.

Dennis and Sandra Hecker were married on February 23, 1973. Throughout the marriage, Dennis enjoyed considerable success in the auto sales business while Sandra engaged in traditional homemaking responsibilities, including caring for the parties' two children and volunteering at church and at the children's school. In August 1982, Dennis petitioned the district court to dissolve the marriage. Both parties retained counsel and negotiated a marital termination agreement which was executed in April 1983. Among its terms were the award to Sandra of the sole physical custody of the parties' 5– and 8–year–old daughters, child support in the amount of $800 per month per child, certain real and personal property, and temporary spousal maintenance of $800 per month for 121 months until June 1, 1993. The judgment and decree entered on May 13, 1983 incorporated the terms of this agreement.

Sandra's first motion to modify the judgment and decree to increase child support and maintenance was filed in September 1985. The parties stipulated to an increase in child support to $900 per month per child, and an increase in spousal maintenance to $1,000 per month for a five-year period, thereafter to return to the original $800 per month for the duration of the temporary period until June 1, 1993. The trial court incorporated that stipulation when it entered an amended judgment and decree on January 24, 1986. Less than a month later, Sandra sought to have the provisions of the judgment and decree relating to the property division vacated, claiming that Dennis had fraudulently concealed assets at the time of the original proceeding. Again, the parties settled the dispute, stipulating that, in exchange for Sandra's waiver of any claims for fraudulent concealment, she would receive $155,000. The judgment and decree was amended to reflect this agreement and entered on June 26, 1987.

On February 2, 1993, four months before her temporary spousal maintenance award was to expire, Sandra again moved the district court to modify the judgment and decree by increasing her monthly maintenance to $2,000 and designating it as a permanent award. In support of her claim that changed circumstances rendered the original award unreasonable or unfair, Sandra stated that she was then 45 years old and, because of her responsibilities with regard to the children, she never completed vocational training as she had intended at the time of the marriage dissolution entered ten years earlier. She claimed that her monthly income from child support and maintenance was $3,196.92 and that her monthly expenses for herself and the youngest child were $3,107, but because the oldest child was to graduate from high school in June 1993, the loss of support for that child and that the expiration of the temporary maintenance period would leave her without sufficient means to provide for her own support. While Dennis acknowledged that he had sufficient income to support a modification, he opposed it based upon the parties' earlier agreements.

Sandra, who was 35 years old at the time of the marriage dissolution, apparently initially appreciated that, because of her stipulation for durational, not permanent maintenance, it was necessary for her to retrain or otherwise enter the labor market. Within a year of that dissolution, in 1984, she obtained a part-time position at the YMCA, performing various tasks during her eight-year employment. She earned approximately $6 per hour during that employment period. She left the YMCA in October 1992 and, from December 1992 to February 1993, was employed as an interviewer for a temporary job service earning $7 to $7.50 per hour. During this time, she applied for several full-time positions, stating that she had initially preferred part-time employment so that she could retain flexibility and meet her children's needs.[1]

The referee granted Sandra's motion for an increased and permanent award in its entirety, finding that she had failed to reha-

---

1. While these proceedings were pending, in March 1994, Sandra worked 1 1/2 days per week in a racquet club pro shop at $4.38 per hour and then, starting in April 1994, for 20–30 hours per week at a coffee house for $5 per hour. Three months into that employment, the coffee house offered her a bookkeeping/supervisory position at $6 to $6.50 per hour. Later in 1994, Sandra temporarily increased her hours to 50 per week.

bilitate and that this failure constituted the requisite substantial change in circumstances that rendered the original award unreasonable and unfair. The referee's award of $2,000 per month as permanent spousal maintenance was affirmed by the district court.

On Dennis' appeal, a divided panel of the court of appeals reversed in an unpublished opinion. *Hecker v. Hecker*, 1994 WL 200604 (C8–93–2305 Minn.App.1994). The court was troubled by the inadequacy of the record as it related first, to Sandra's financial circumstances, particularly with regard to any investment income attributable to the $155,000 additional property division awarded in 1987, and then, to the reasons for her failure to rehabilitate. The appellate court remanded to the district court for further proceedings to address those inadequacies and to determine whether Sandra's claimed changed circumstances satisfied the statutory basis for modification. Minn.Stat. § 518.64, subd. 2 (1992). Relying upon its earlier decision in *Sand v. Sand*, 379 N.W.2d 119 (Minn.App. 1985), the appellate court appears to have suggested to the trial court that the reasons for Sandra's failure to rehabilitate must be ascertained because, at the time of the dissolution, the parties contemplated that she would be the primary custodian of the children and, as far as the record was developed, there existed no *changed* circumstances— that is, the fact that Sandra would devote considerable time to the care of the children was expected when the parties agreed to her sole physical custody.

On remand, the referee expanded her inquiry to consider not only those issues specified by the court of appeals, but also Sandra's renewed request for permanent maintenance, on this occasion in the amount of $3,000 per month. Dennis offered the report of a vocational expert who opined that Sandra could expect entry-level earnings of $16,000 per year in retail management and, with three years' experience, could increase those earnings to $25,000 per year. The expert commented that during the time since the marriage was dissolved, Sandra was "minimally involved" in preparing for or pursuing a career and that she could have improved her earning capacity

had she made a greater effort. The report was not rebutted.

The referee found that, in reliance upon Dennis' financial prosperity, Sandra "chose not to make any serious effort at obtaining vocational training or work experience, but rather decided to rely upon the possibility that she would continue to receive spousal maintenance, despite the terms of the decree." The referee found that there was no evidence to support Sandra's claim that her health problems, the health or needs of the children, the stress of divorce or the need to appear in court for periodic litigation restricted her achievement of better employment with greater income. Based upon Sandra's failure to make any reasonable effort toward rehabilitation, the referee concluded that it was necessary to attribute to her a capacity to earn an annual income of $25,000 which, when coupled with annual investment income of $5,400, would result in an approximate net monthly income of $1,825. Finding also that Sandra's reasonable monthly expenses are $3,200, the referee awarded her permanent monthly spousal maintenance of $1,375—the difference between the monthly expenses and the total of investment and attributed income—to allow Sandra to meet her needs. The district court affirmed in all respects.

On Dennis' second appeal, he argued that Sandra's willful failure to attempt retraining or rehabilitation should, as a matter of law, operate as a bar to her receipt of permanent maintenance, particularly because at the time of the original dissolution proceedings, the parties had stipulated to temporary or durational award. In affirming the district court, the court of appeals rejected that argument, holding that Sandra's willful failure to rehabilitate did not preclude her from receiving further maintenance if, after attributing to her the maximum earning capacity attainable by diligent efforts, she failed to become self-supporting. *Hecker v. Hecker*, 543 N.W.2d 678, 681 (Minn.App.1996).

We have not had the occasion to address the propriety of attributing to a spousal maintenance recipient an earning capacity representing reasonable efforts to achieve rehabilitation to the best of one's ability and

we do so now within the context of the statutory framework for modification of an initial spousal maintenance award. See Minn.Stat. § 518.64, subd. 2 (1996) which provides in pertinent part as follows:

> The terms of an order respecting maintenance or support may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party * * *; (3) receipt of assistance * * *; (4) a change in the cost of living for either party * * *, any of which makes the terms unreasonable and unfair * * *.

That statute places a dual burden on the party seeking modification—first, to demonstrate that there has occurred a substantial change in one or more of the circumstances identified in the statute and second, to show that the substantial change has the effect of rendering the original award unreasonable and unfair. See Nardini v. Nardini, 414 N.W.2d 184, 198–99 (Minn.1987); Rydell v. Rydell, 310 N.W.2d 112, 115 (Minn.1981).

■ Here, the parties originally stipulated to their respective rights and obligations, including that Sandra would receive temporary or durational spousal maintenance in presumed anticipation of her efforts to achieve some level of self-sufficiency. While that stipulation represents the parties' volun-

tary acquiescence in an equitable settlement, Claybaugh v. Claybaugh, 312 N.W.2d 447, 449 (Minn.1981), once it has been merged into the judgment and decree, it does not operate as a bar to later consideration of whether a change in circumstances warrants a modification. See Hellman v. Hellman, 250 Minn. 422, 426, 84 N.W.2d 367, 371 (1957). Instead, its relevance in a modification context is in the identification of the baseline circumstances against which claims of substantial change are evaluated. We review the trial court's analysis of the claims of substantial change to determine whether it carefully exercised its discretion in modifying the terms of the original judgment and decree which incorporated the parties' stipulation. Claybaugh v. Claybaugh, 312 N.W.2d at 449 (citing Sieber v. Sieber, 258 N.W.2d 754, 757 (Minn.1977)); Kaiser v. Kaiser, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971).

■ The referee implicitly concluded that the requisite substantial change in circumstances was demonstrated in Sandra's lack of ability to meet her needs without continued maintenance.[2] The substantial change was the frustration of the parties' expectations of self-sufficiency and the resultant substantial increase in Sandra's need for maintenance. See, e.g., Rydell v. Rydell, 310 N.W.2d 112 (Minn.1981).[3] We therefore conclude that

2. In Nardini, we considered the plight of a 56–year–old homemaker to whom the trial court had awarded temporary spousal maintenance upon the termination of her 31–year marriage. We reversed the temporary award in favor of a permanent award because Marguerite Nardini had, at best, an uncertain prospect of becoming fully self-supported through a combination of income from investments and employment. Nardini, 414 N.W.2d at 197–98. Recognizing this uncertainty of self-sufficiency in light of Ms. Nardini's particular circumstances, we observed that statutory modification of the temporary award at a later time in the event Ms. Nardini did not achieve self-sufficiency might require intellectual gymnastics:

> Although equity would support modification of the temporary award if that person cannot become fully self-supporting during the period of the temporary award, a petition for modification does not comfortably fit the statutory format. * * * [T]he person who cannot secure employment or who can become only partially self-supporting is hard pressed to meet the burden of proving either that the petitioner's earnings have decreased or his or her need has increased. The

actual fact is that the change in the petitioner's circumstances is insufficient or nonexistent, yet by the terms of the decree maintenance is to cease. On the other hand, if there is a change in the earnings or needs of the maintenance payer which makes the terms of the award unfair or unreasonable, the change will support a petition for modification.

Id. at 198–99. These comments should still guide a trial court in its initial decision to award temporary or permanent maintenance, but are not dispositive in a modification proceeding where the parties themselves have demonstrated by their stipulation that they fully expect the maintenance recipient to achieve self-sufficiency during the rehabilitation period.

3. In Rydell, we concluded that the maintenance recipient's unexpectedly worsened physical condition substantially increased her need for maintenance and constituted the requisite change in circumstances under the statute. Rydell, 310 N.W.2d at 115. Here, Sandra's unexpected failure at rehabilitation created a similar increased need for maintenance.

the trial court did not abuse its discretion in identifying a substantial change in circumstances warranting a modification of the spousal maintenance award and subsequently recasting Dennis' obligation for spousal maintenance as permanent.

 The inquiry does not end there, however, because the referee also found that Sandra's efforts toward attaining self-sufficiency were unreasonable. Rather than obtaining vocational training or the type of work experience aimed at providing for her own support, Sandra has disregarded the spirit of her stipulation that implied a good faith effort[4] in favor of her choice to "rely upon the possibility that she would continue to receive spousal maintenance, despite the terms of the decree." Rather than reward Sandra for her lack of reasonable effort, the referee engaged in a balancing of that failure against Sandra's inability to provide for her reasonable needs and fashioned an award which attributed to her the income that the unrefuted expert testimony demonstrated could have been produced by reasonable effort. The permanent spousal maintenance award represents the difference between Sandra's demonstrated needs and the investment and attributed income. The result is within the bounds of the trial court's considerable discretion and is consistent with what we perceive as the principle embodied in the statutory maintenance provision, which calls for a "just" award. See Minn.Stat. § 518.552, subd. 2.

Affirmed.

BLATZ, J., took no part in the consideration or decision of this case.

PAGE, Justice (concurring specially).

While I concur in the result reached by the court, I write separately to express my concern about this protracted litigation which continues more than 14 years after the parties' marriage was dissolved. In 1983, the parties engaged in extensive negotiations and ultimately executed a stipulation purporting to fix their relative rights and responsibilities and representing their various compromises with regard to the division of the marital assets and the award of temporary maintenance to assist S. Hecker in achieving self-sufficiency.[1] While S. Hecker did not achieve self-sufficiency, it seems to me that, at some point, there should be some finality to this litigation that would allow these parties to pursue their independent lives without resort to the continued use of judicial proceedings and judicial resources.

---

4. In *Nardini,* we recognized an implicit requirement that a temporary maintenance recipient make a reasonable effort to become self-supporting in accordance with the expectations of the parties. *Nardini,* 414 N.W.2d at 198. That comment is even more appropriate when the temporary maintenance award is the product of the parties' negotiated stipulation.

1. I note, in passing, that S. Hecker's failure to achieve self-sufficiency appears from the record to be more a failure to make an effort to become self-sufficient than an actual failure to become self-sufficient.