*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2182**

In re the Marriage of:
Heather Santilli Gamble, petitioner,
Appellant,

vs.

John Stebbins Gamble,
Respondent.

**Filed July 21, 2014
Affirmed; motion granted
Hudson, Judge**

Olmsted County District Court
File No. 55-FA-10-7298

Suzanne L. Peterson, Jenny L. Nelson, Swisher Law Firm, Rochester, Minnesota (for appellant)

Mary H. Dunlap, Dunlap & Seeger, P.A., Rochester, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Halbrooks, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**HUDSON**, Judge

In this post-dissolution dispute, appellant-wife argues that (a) the dissolution judgment should be reopened based on fraud, fraud on the court, or duress and (b) the award of maintenance to husband should be decreased because his needs have decreased and his income and wife's cost of living have increased. We affirm. We also grant respondent's motion to strike a portion of appellant's supplemental addendum.

## FACTS

The district court dissolved the eleven-year marriage of appellant Heather Santilli Gamble and respondent John Stebbins Gamble in May 2012. The parties were granted joint legal custody of their three minor children; respondent was granted sole physical custody, subject to liberal parenting time for appellant. Appellant worked full time as a business analyst at Mayo Clinic with an approximate gross monthly income of $5,600; respondent worked overnight as a direct support specialist at Hiawatha Homes, with an approximate gross monthly income of $1,408. Respondent also cared for the children during the day.

The parties first separated in 2010, when appellant initially moved from the homestead. At a hearing in March 2012, counsel read a settlement agreement into the record; appellant's attorney stated that the parties were attempting to reconcile, but if that was unsuccessful, she would draft the agreement for their approval and submit it to the district court. About a month later, appellant returned to the homestead. Her attorney then requested to withdraw, based on appellant's request to sign an agreement that

2

differed substantially from the original proposed settlement. At a hearing in early May 2012, the district court allowed appellant's counsel to withdraw and granted appellant's request to proceed pro se. Appellant executed a waiver of her right to counsel.

About two weeks later, respondent's attorney presented a revised stipulation, which was approved by the district court at a default hearing. The resulting judgment contained findings showing that, based on the parties' respective gross incomes, appellant was able to meet her needs while contributing to respondent's support and that respondent was in need of, and entitled to, maintenance of $2,100 per month until the youngest child graduated from high school or further court order. No child support was ordered, and the parties were to share the children's expenses equally, including household expenses. The district court awarded respondent the parties' homestead and its associated mortgage, subject to appellant's sharing the mortgage payment. Appellant was ordered to transfer $20,500 of her retirement plans to respondent and to pay a portion of respondent's attorney fees.

Within a year, appellant moved permanently from the homestead. In April 2013, represented by a new attorney, she moved to reopen the judgment or to reduce maintenance. She maintained that she had been without counsel when the final stipulation was approved; that the property distribution was unequal; and that respondent had a decreased need for maintenance because he was receiving monthly funds from his mother and had not disclosed additional distributions from a family trust. She asserted that she had once filed for an order for protection against respondent and that he had acted in a directive and authoritarian manner toward her.

3

Respondent opposed the motion. He argued that appellant's allegations of abuse related to a period before the parties' initial separation, that their disagreements over parenting styles did not establish duress, and that appellant initiated the revision to their agreement and allowed her attorney to withdraw. He asserted that appellant had depleted her resources on family expenses during the dissolution. He maintained that, although $20,000 from the trust was available for him to withdraw, he had not done so; that a $100,000 inheritance from his father was a non-marital asset; and that his mother's monthly mortgage payments were not income, but payments on a loan against his future inheritance.

The district court denied the motion to reopen the judgment. The district court reasoned that the record lacked evidence of fraud or duress because appellant chose a path contrary to her attorney's advice, allowed counsel to withdraw, renewed settlement negotiations, acknowledged a fair stipulation, and chose not to attend the default hearing. The district court found that appellant's emotional and chemical-dependency issues may have affected her approach to negotiations, but that any duress was self-induced, and that her fraud claim was based on respondent's receipt of public assistance, which was irrelevant. The district court also declined to modify maintenance, finding that, although appellant asserted changed circumstances of her household expenses, other alleged events occurred before the judgment and were previously known, and that the parties failed to submit sufficient information on their resources and inability to meet needs independently to allow consideration of that issue. This appeal follows.

4

# DECISION

## I

This court reviews a district court's decision whether to vacate a dissolution judgment for an abuse of discretion, which requires that the district court's ruling be against logic and the facts on record. *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996); *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). The district court treats a motion to reopen a dissolution judgment as it would a complaint in a separate action alleging fraud, and may not summarily dispose of the motion unless there is no genuine issue of material fact in dispute. *Doering v. Doering*, 629 N.W.2d 124, 130 (Minn. App. 2001), *review denied* (Minn. Sept. 11, 2001).

"The legislature . . . has recognized the importance of finality in dissolution proceedings by setting forth specific circumstances that must be present for a party to be relieved of the terms of a judgment." *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn. 1997). By statute, these circumstances include mistake, fraud, or "other misconduct of a party." Minn. Stat. § 518.145, subd. 2 (2012). Although a stipulation may be vacated before the entry of judgment if it is improvidently made and ought not to stand in equity and good conscience, once judgment has been entered, "different circumstances arise, as the dissolution is now complete and the need for finality becomes of central importance." *Shirk*, 561 N.W.2d at 522. Thus, the sole way to seek relief from a stipulation after judgment requires meeting the requirements of Minn. Stat. § 518.145. *Id.*.

Appellant argues that the district court abused its discretion by declining to vacate the judgment based on ordinary fraud. Ordinary fraud in a dissolution context relates to a

5

party's failure to fully and accurately disclose assets and does not require an affirmative misrepresentation or intentional course of concealment. *Doering*, 629 N.W.2d at 130. Appellant argues that respondent had a higher income and more financial resources than he initially disclosed to her and to Olmsted County Community Services in applying for food assistance. She argues that he received continuing income of rent, mortgage, and expense payments from his mother, as well as $120,000 within a three-year period from a family trust, and that, by failing to disclose these payments, he was able to obtain a larger property settlement and maintenance.

But the district court found appellant's affidavit to be not credible. *See Hestekin v. Hestekin*, 587 N.W.2d 308, 310 (Minn. App. 1998) (noting that appellate courts defer to the district court's resolution of factual issues presented by conflicting affidavits). The district court appropriately determined that respondent's application for and receipt of food-assistance payments, which occurred during the parties' separation, had no genuine bearing on the issues in the dissolution. And the district court did not err by concluding that appellant failed to establish a material factual issue on nondisclosure of income or assets from respondent's family. The rent payment from respondent's mother related to a homestead addition in 2009, when appellant was still living in the homestead. Respondent furnished a written loan agreement to support his argument that the mortgage payments made by his mother were a loan on his future inheritance. And he has asserted that trust funds became available to him only in 2013, after the entry of judgment. Even if a material issue existed on the timing of the trust distribution, appellant has failed to raise a material factual issue on whether any such distribution was marital property,

6

rather than an inheritance to respondent alone. *See* Minn. Stat. § 518.003, subd. 3b(a) (2012) (defining nonmarital property as property acquired during the marriage "as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse").

Appellant also argues that the judgment should be vacated based on fraud on the court. Intrinsic fraud, or fraud on the court, relates to "matters involving the court proceedings such as perjured testimony." *Doering*, 629 N.W.2d at 129 n.1 (quotation omitted). Fraud on the court requires a showing of intentional material misrepresentation or nondisclosure, which misleads the court and the opposing party and "mak[es] the property settlement grossly unfair." *Maranda v. Maranda*, 449 N.W.2d 158, 165 (Minn. 1989). Appellant argues that, at the default hearing, respondent intentionally made misleading statements to the court about settlement negotiations. At the hearing, respondent's attorney inquired, "up until recently, your wife had been represented so [the] settlement discussions actually went through counsel, is that correct?" Respondent replied, "Yes." He also replied in the affirmative when his attorney asked whether the parties had attended mediation and whether "[that was] reflected in this document that both you and your wife have signed." Appellant argues that respondent intentionally misrepresented that appellant was represented by counsel during settlement discussions and that the stipulation reflected a mediated agreement. The record shows that appellant was in fact acting pro se and had waived the right to counsel. Although the district court could have asked respondent additional questions to clarify the relevant timeframe of his comments, respondent's lack of specificity about the context of settlement negotiations

7

does not show that he intentionally misled the district court about the stipulation, which also contained language stating that the parties agreed that it was fair, just, and equitable.

Appellant further argues that she agreed to the settlement under duress. Duress may amount to "other misconduct of an adverse party," which warrants reopening a judgment under Minn. Stat. § 518.145, subd. 2(3). *See Haefele v. Haefele*, 621 N.W.2d 758, 762 (Minn. App. 2001) (listing duress as a basis for reopening a judgment), *review denied* (Minn. Feb. 21, 2001). Duress implies taking advantage of a party's mental or emotional condition, *see Lindsey v. Lindsey*, 388 N.W.2d 713, 715–16 (Minn. 1986), or "undue pressure" coupled with abusive behavior, *see Hestekin*, 587 N.W.2d at 310. Appellant argues that respondent's history of abuse and authoritarian control exerted undue pressure on her to accept the revised stipulation, which was drafted by respondent and his attorney without her input. The district court found that, because the alleged intimidation by respondent occurred before the parties' separation, it is irrelevant to the settlement negotiations. On this record, that finding is not clearly erroneous. Similarly, respondent's conduct resulting in a domestic-abuse restraining order, which was obtained several months after the judgment, is not relevant to the parties' pre-judgment negotiations.

In addition, appellant's attorney withdrew from representation after advising the district court that she disagreed with appellant's decision to sign the stipulation. Appellant signed a waiver of her right to counsel and proceeded without an attorney. "[T]here is nothing inherently coercive or fraudulent about knowingly choosing to proceed without counsel and, as a result, being somewhat intimidated by being forced to

8

deal directly with another party's attorney." *Toughill v. Toughill*, 609 N.W.2d 634, 640 (Minn. App. 2000). Although appellant alleges that she felt pressure to give in to respondent's terms, the district court found her version of events not credible, and we defer to the district court's ability to determine credibility based on the parties' affidavits. *Hestekin*, 587 N.W.2d at 310.

We recognize that, in a dissolution matter, the district court has a duty to protect both parties' interests and ensure that a stipulation is fair and reasonable. *Kielley v. Kielley*, 674 N.W.2d 770, 777 (Minn. App. 2004). "But vacation is not an appropriate remedy to deal with unanticipated consequences of a settlement or inexcusable mistake." *Hestekin*, 587 N.W.2d at 310. Appellant did not challenge the settlement agreement until after judgment was entered and she had difficulty meeting her financial obligations under that judgment. Because she did not demonstrate material facts tending to satisfy the requirements of Minn. Stat. § 518.145, the district court did not abuse its discretion by declining to vacate the judgment.

## II

Appellant argues that the district court abused its discretion by denying her motion to decrease maintenance. This court reviews a district court's decision relating to maintenance modification for an abuse of discretion. *See Hecker v. Hecker*, 568 N.W.2d 705, 709–10 (Minn. 1997). Before the district court may modify a spousal-maintenance award, the moving party must provide clear proof that, since the spousal-maintenance obligation was established or last modified, a substantial change of circumstances has occurred that renders the award unreasonable and unfair. Minn. Stat. § 518A.39, subd. 2

9

(2012); *Beck v. Kaplan*, 566 N.W.2d 723, 726 (Minn. 1997). Factors supporting maintenance modification include "substantially increased or decreased gross income of an obligor or obligee" and "substantially increased or decreased need of an obligor or obligee." Minn. Stat. § 518A.39, subd. 2. The circumstances that existed when the stipulated judgment was entered serve as "the baseline circumstances against which claims of substantial change are evaluated." *Hecker*, 568 N.W.2d at 709.

The district court denied the motion to reduce maintenance, finding that some of the events appellant claims support her motion occurred before the entry of judgment and that the parties failed to submit sufficient information about their respective resources and ability to meet their needs. The record supports the district court's denial of the motion. Appellant had the burden to show both a substantial change in circumstances and unfairness and unreasonableness because of that change. *Id.* Although she presented information that, because she left the homestead, her rent and household expenses had increased since the judgment, she furnished no information on how decreasing maintenance would affect respondent's ability to meet his household needs. In light of the insufficient submissions on the issue of maintenance modification, the district court did not abuse its discretion by denying the motion.

On appeal, respondent moved this court to strike an affidavit contained in appellant's supplemental addendum. This affidavit, which was submitted to the district court in another action between the parties, is not a part of the record in this case. *See* Minn. R. Civ. App. P. 110.01 (stating that the papers filed in the district court, the exhibits, and the transcript of the proceedings shall constitute the record on appeal). "An

10

appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below." *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn. 1988). Because the affidavit is not contained in the district court record, it is not properly before this court, and we grant respondent's motion to strike it.

**Affirmed; motion granted.**