And in paragraph 26b of the dissolution decree, the dissolution court found as follows:
[Judy] is capable of obtaining employment as an accounting clerk, billing clerk, customer service representative, and general office clerk, within a three month period to allow her time to learn the Microsoft Office Suite. She can earn $14.28 per hour, or $29,702 per year. [Judy] is a bright woman who is capable of acquiring fresh credentials in the accounting field designed to update and advance her skill level. With a two-year *694 education commitment either at the baccalaureate or graduate level, she could expect to earn $43,534 to $50,419 per year. [Judy] is capable of becoming partially self-supporting.
The dissolution court also found, in paragraph 26c of the dissolution decree, that Mark's and Judy's reasonable monthly expenses, exclusive of expenses related to their children, were $10,703 and $8,500, respectively. After considering additional statutory factors, the dissolution court ordered Mark to pay Judy $10,000 per month in permanent spousal maintenance.
In June 2017, Mark moved to modify his spousal-maintenance obligation. Mark asked the district court to terminate his spousal-maintenance obligation or, in the alternative, to reduce it. He introduced evidence that his income had decreased as a result of health problems, which required him to sell a 50-percent interest in his dental practice and to reduce his workload by 30 percent. Judy did not attempt to rebut Mark's evidence of decreased income. Mark argued that the district court should consider Judy's ability to earn income through full-time employment, even though she then was unemployed. Disputes arose concerning Mark's efforts to engage in discovery concerning Judy's financial assets and investment income. A motion hearing was rescheduled after Judy's counsel failed to appear. The district court conducted a hearing on Mark's motion at which it granted Mark leave to take Judy's deposition. After the hearing, Mark submitted a transcript of Judy's deposition, in which Judy testified that she had not pursued additional education or vocational training since the dissolution decree and did not believe that she had an obligation to do so.
In February 2018, the district court granted Mark's motion to modify spousal maintenance. With respect to Mark's income, the district court found that his salary had been reduced by 30 percent (from $265,000 to $185,500) and that his income from the profits of his dental practice had been reduced by 50 percent (from $197,119 to $98,560). With respect to Judy's earning capacity, the district court found that she "remains unemployed" but "has not presented sufficient evidence that she is not able-bodied and not capable of employment."
The district court further found that Judy "has failed to make a reasonable effort to obtain employment." Accordingly, the district court found that Judy's "potential earned income" is $50,419 "based on Finding of Fact 26(b) of the Judgment and Decree," and the district court attributed that amount of employment income to her.
The district court also found that Judy receives $27,887 in investment income per year based on an assumed rate of return of four percent on the investment assets that were awarded to her in the dissolution decree. The district court further found that Judy's reasonable monthly expenses are $8,500, which was the amount of her reasonable expenses in 2012 that were not child-related. The district court found that Mark's reasonable monthly expenses are $10,703, which was the amount of his reasonable expenses in 2012 that were not child-related.
Based on the findings described above, as well as a spreadsheet prepared by an expert retained by Mark, the district court reduced the spousal-maintenance award from $10,000 per month to $4,785 per month. The district court also granted Mark's motion for conduct-based attorney fees and awarded him $10,000 in attorney fees. Judy appeals.
ISSUES
I. Did the district court err by modifying the award of permanent spousal maintenance *695 by reducing it from $10,000 per month to $4,785 per month?
II. Did the district court err by awarding Mark conduct-based attorney fees in the amount of $10,000?
ANALYSIS
I.
Judy argues that the district court erred by granting Mark's motion to modify the award of permanent spousal maintenance by reducing it from $10,000 per month to $4,785 per month. She challenges the district court's modification on three grounds, which we discuss below.
Spousal maintenance is defined by statute to mean "payments from the future income or earnings of one spouse for the support and maintenance of the other." Minn. Stat. § 518.003, subd. 3a (2018). If a party requests spousal maintenance, a district court must engage in a two-step analysis. First, a district court must consider whether the spouse seeking spousal maintenance either
(a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or
(b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.
Minn. Stat. § 518.552, subd. 1 (2018). This threshold inquiry asks, in essence, whether the party seeking spousal maintenance has demonstrated a "showing of need." Curtis v. Curtis , 887 N.W.2d 249, 252 (Minn. 2016). A party demonstrates a need for spousal maintenance if, considering the standard of living during the marriage, the party is unable to provide for his or her reasonable expenses through employment income or investment income or a combination of both. See Minn. Stat. § 518.552, subd. 1 ; Curtis , 887 N.W.2d at 252.
Second, if a party demonstrates a need for spousal maintenance, the district court may award spousal maintenance "in amounts and for periods of time, either temporary or permanent, as the court deems just, ... after considering all relevant factors." Minn. Stat. § 518.552, subd. 2 ; see also Erlandson v. Erlandson , 318 N.W.2d 36, 39-40 (Minn. 1982). Eight of the factors relevant to the amount and duration of spousal maintenance are prescribed by statute. See Minn. Stat. § 518.552, subd. 2(a)-(h). The first statutory factor is "the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently." Id. , subd. 2(a). The second factor is "the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting." Id. , subd. 2(b). No single factor is dispositive. Broms v. Broms , 353 N.W.2d 135, 138 (Minn. 1984).
"Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification." Minn. Stat. § 518.552, subd. 3. Accordingly, an award of permanent spousal maintenance is more appropriate if "it is uncertain that the spouse seeking maintenance can ever become self-supporting."
*696 Nardini v. Nardini , 414 N.W.2d 184, 198 (Minn. 1987). But if the only uncertainty is when (not whether ) a recipient of spousal maintenance will become self-supporting, a district court should award temporary spousal maintenance. Maiers v. Maiers , 775 N.W.2d 666, 668-69 (Minn. App. 2009). "An award of temporary maintenance is based on the assumption that the party receiving the award not only should strive to obtain suitable employment and become self-supporting but that he or she will attain that goal." Nardini , 414 N.W.2d at 198.
A district court may modify an award of spousal maintenance if a party makes a showing of a substantial change in circumstances that makes the existing award "unreasonable and unfair." Minn. Stat. § 518A.39, subd. 2(a), (b) (2018). A substantial change in circumstances may be based on, among other things, "substantially increased or decreased gross income of an obligor or obligee" or "substantially increased or decreased need of an obligor or obligee." Id. , subd. 2(a)(1), (2). If a modification of spousal maintenance is appropriate, the district court must determine the amount and duration of the modified spousal maintenance award by applying all relevant factors, including the statutory factors that apply to an initial award of spousal maintenance, as they "exist at the time of the [modification] motion." Id. , subd. 2(e) (citing Minn. Stat. § 518.552 ); see also Lee v. Lee , 775 N.W.2d 631, 635-36 (Minn. 2009).
This court generally applies an abuse-of-discretion standard of review to a district court's decision to modify spousal maintenance. Hecker v. Hecker , 568 N.W.2d 705, 709-10 (Minn. 1997). A district court abuses its discretion in making such a decision if it makes findings of fact that are not supported by the record, misapplies the law, or resolves the matter in a manner that is contrary to logic and the facts on record. Dobrin v. Dobrin , 569 N.W.2d 199, 202 (Minn. 1997). To the extent that a modification decision depends on findings of fact, we apply a clear-error standard of review to those findings of fact. Bissell v. Bissell , 291 Minn. 348, 191 N.W.2d 425, 427 (1971) ; Gessner v. Gessner , 487 N.W.2d 921, 923 (Minn. App. 1992).
In this case, Judy does not challenge the district court's determination that there has been a substantial change in circumstances or its determination that the change renders Mark's existing maintenance obligation unreasonable and unfair. She challenges only the amount of the modified award of permanent spousal maintenance. In doing so, she makes three arguments.
A.
Judy first argues that the district court erred by attributing to her employment income of $50,419. She contends that the district court should not have attributed any employment income to her because the spousal-maintenance award was permanent rather than temporary, because the dissolution court did not order a series of stepped reductions in the amount of the award, and because the dissolution court did not expressly impose on her an obligation to increase her earning capacity by obtaining additional education or vocational training. She asserts that "[i]t is unfair to retroactively impose a rehabilitation obligation upon [her] that was not part of the original decree." In response, Mark contends that, in ruling on a motion to modify an award of permanent spousal maintenance, a district court is not precluded from considering the recipient's present or future earning capacity. Mark further contends that the district court's decision is *697 properly based on the evidence in the record.
As stated above, if a district court makes an award of temporary spousal maintenance in a dissolution decree, there is an "assumption that the party receiving the award not only should strive to obtain suitable employment and become self-supporting but that he or she will attain that goal." Nardini , 414 N.W.2d at 198. Consequently, if a party moves to modify an award of temporary spousal maintenance, the district court may attribute income to the recipient of spousal maintenance if he or she has failed to make reasonable efforts to find suitable employment or to otherwise become self-supporting. Hecker , 568 N.W.2d at 710.
The district court in Hecker awarded 10 years of temporary spousal maintenance to the former wife, who had "traditional homemaking responsibilities" during the marriage. Id. at 707. Shortly before the expiration of the 10-year period, she moved to modify the temporary award by, among other things, making it permanent. Id. She stated to the district court that, "because of her responsibilities with regard to the children, she never completed vocational training as she had intended at the time of the marriage dissolution." Id. Instead, she had worked part-time in positions that did not require additional training. Id. The district court granted her motion and awarded permanent spousal maintenance. Id. But the district court found the former wife, "in reliance upon [the former husband's] financial prosperity, ... chose not to make any serious effort at obtaining vocational training or work experience, but rather decided to rely upon the possibility that she would continue to receive spousal maintenance, despite the terms of the decree." Id. at 708. The district court also found that there were no circumstances that had "restricted her achievement of better employment with greater income." Id. Because the former wife had "fail[ed] to make any reasonable effort toward rehabilitation," the district court "attribute[d] to her a capacity to earn an annual income of $25,000," which was the amount that the former husband's vocational expert testified she could earn in retail management after three years of experience. Id.
On appeal, the supreme court noted that, at the time of the dissolution decree, the parties had stipulated to temporary spousal maintenance "in presumed anticipation of [the former wife's] efforts to achieve some level of self-sufficiency." Id. at 709. The terms of the dissolution decree provided "the baseline circumstances against which claims of substantial change are evaluated." Id. The supreme court concluded that the district court did not abuse its discretion by finding that the former wife had demonstrated a substantial change in circumstances due to her "lack of ability to meet her needs without continued maintenance" because of "the frustration of the parties' expectations of self-sufficiency and the resultant substantial increase in [her] need for maintenance." Id. at 709-10. The supreme court also considered the district court's finding that the former wife's "efforts toward attaining self-sufficiency were unreasonable," as follows:
Rather than obtaining vocational training or the type of work experience aimed at providing for her own support, Sandra has disregarded the spirit of her stipulation that implied a good faith effort in favor of her choice to "rely upon the possibility that she would continue to receive spousal maintenance, despite the terms of the decree." Rather than reward Sandra for her lack of reasonable effort, the referee engaged in a balancing of that failure against Sandra's inability *698 to provide for her reasonable needs and fashioned an award which attributed to her the income that the unrefuted expert testimony demonstrated could have been produced by reasonable effort. The permanent spousal maintenance award represents the difference between Sandra's demonstrated needs and the investment and attributed income. The result is within the bounds of the trial court's considerable discretion and is consistent with what we perceive as the principle embodied in the statutory maintenance provision, which calls for a "just" award. See Minn. Stat. § 518.552, subd. 2.
Id. at 710.
The duty to make a reasonable effort to increase one's earning capacity is not necessarily limited to cases in which a district court has made an award of temporary spousal maintenance in the dissolution decree, as in Hecker . This court has recognized that a recipient of permanent spousal maintenance also may have an obligation to make a reasonable effort to become partially self-supporting. In Passolt v. Passolt , 804 N.W.2d 18 (Minn. App. 2011), review denied (Minn. Nov. 15, 2011), we expressly rejected the notion that "a recipient of permanent maintenance never has an obligation to increase earning power through occupational retraining." Id . at 24 n.2. We noted that efforts to "increas[e] one's earning power through occupational retraining" may arise even if there is no expectation that a recipient of spousal maintenance will achieve "economic self-sufficiency," as is true with an award of temporary spousal maintenance. See id. We suggested that a duty to increase one's earning capacity also may exist with an award of permanent spousal maintenance, in which case the recipient's efforts might allow him or her to increase his or her degree of self-sufficiency and correspondingly reduce the need for spousal maintenance. See id.
Since Passolt , this court has not considered an appeal in which a district court has attributed income to a recipient of permanent spousal maintenance based on a finding that the recipient failed to make a reasonable effort to increase his or her earning capacity. Before Passolt , however, we considered an appeal in which a district court did not attribute income to a recipient of permanent spousal maintenance. In Schroeder v. Schroeder , 405 N.W.2d 267 (Minn. App. 1987), a former husband moved to modify his obligation to pay permanent spousal maintenance to his former wife, and the district court denied the motion. Id. at 268-69. On appeal, he argued, in part, that his former wife "could work full-time if she chose" because she was no longer caring for young children and was in good health. Id. at 269. We rejected the argument on the grounds that the "maintenance award was permanent and not conditioned on any rehabilitative efforts or unemployment on her part ." Id. (emphasis added). Given those facts, we reasoned that the former wife "does not have an obligation to undertake full-time employment merely to help [the former husband] meet his obligations." Id.
In light of this body of caselaw, an award of temporary spousal maintenance implies that the recipient presently is not self-supporting but is expected to become self-supporting and, thus, has an obligation to make reasonable efforts to increase his or her earning capacity to become self-supporting. See Hecker , 568 N.W.2d at 708-10 ; Maiers , 775 N.W.2d at 668. Similarly, an award of permanent spousal maintenance with stepped reductions implies that the recipient is not self-supporting and is not expected to become fully self-supporting but has an obligation to make reasonable efforts to increase his *699 or her earning capacity to become less dependent on spousal maintenance. See Passolt , 804 N.W.2d at 24 n.2. On the other hand, an award of permanent spousal maintenance, by itself, without any conditions requiring the recipient to make efforts to increase his or her earning capacity, implies that the recipient will not become fully self-supporting, and has no obligation to increase his or her earning capacity. See Nardini , 414 N.W.2d at 198 ; Schroeder , 405 N.W.2d at 269. The natural corollary of our Schroeder opinion is that, if a district court determines that a recipient of permanent spousal maintenance should make reasonable efforts to increase his or her earning capacity so as to become partially self-supporting, the district court must expressly impose that obligation on the recipient before finding that the recipient failed to make such reasonable efforts. See id. Without such an express statement, a recipient of permanent spousal maintenance is not on notice that, contrary to the implication of such an award that the recipient has no obligation to increase his or her earning capacity, his or her inaction might lead to an adverse decision on a subsequent motion to modify spousal maintenance. An express statement may be particularly important at a later date if, as here, the recipient does not move to modify an award of permanent spousal maintenance but, rather, is required to respond to a modification motion brought by the former spouse with the obligation to pay permanent spousal maintenance. See id.[1]
In this case, the dissolution court made findings in the dissolution decree concerning Judy's then-present earning capacity and her then-estimated ability to increase her earning capacity through additional education and vocational training. Specifically, the dissolution court found that, in 2012, Judy, who then was unemployed, was able to earn $29,702 per year in positions for which she already was qualified (subject to a short three-month period of vocational retraining). The dissolution court also found that she could earn as much as $50,419 per year if she were to obtain two additional years of education. The dissolution court further found that Judy was "capable of becoming partially self-supporting."
Despite these detailed findings, the dissolution court did not expressly attribute any employment income to Judy at the time of the award of permanent spousal maintenance. No such attribution is implied because the dissolution court's finding of Judy's reasonable monthly expenses ($11,000 per month, including child-related expenses, or $132,000 per year) is roughly equal to the sum of the award of permanent spousal maintenance ($120,000 per year) and her investment income ($8,000 per year). The dissolution court did not state that Judy had an obligation to obtain additional education or vocational training or otherwise make reasonable efforts to increase her earning capacity, and the dissolution court did not state that, in a future modification proceeding, she might have income attributed to her if she has *700 not made reasonable efforts to increase her earning capacity.
In its order granting Mark's motion to modify the award of permanent spousal maintenance, the district court attributed income to Judy for the first time. The district court attributed to her "potential earned income" based on its finding that she had "failed to make a reasonable effort to obtain employment." Specifically, the district court attributed to her income of $50,419 "based on Finding of Fact 26(b) of the Judgment and Decree." This finding of attributed income is erroneous in two respects. First, by referring back to findings made in 2012 concerning Judy's then-present earning capacity and then-projected future earning capacity and by incorporating those findings by reference, the district court did not consider the factors relevant to the amount and duration of an award of spousal maintenance as they "exist[ed] at the time of the [modification] motion." See Minn. Stat. § 518A.39, subd. 2(e). A district court may attribute employment income to a recipient on a motion to modify based on the recipient's present earning capacity only if the district court makes a finding of the recipient's earning capacity as of the time of the modification proceeding. Second, by finding that Judy failed to make a reasonable effort to increase her earning capacity, the district court improperly found that she had not complied with an obligation that never was imposed on her. A district court may attribute income to a maintenance recipient based on the recipient's failure to make reasonable efforts to increase his or her earning capacity through additional education or vocational training only if the district court previously had expressly imposed such an obligation on the recipient.
Thus, the district court erred by attributing employment income of $50,419 to Judy when determining the amount of the modified award of permanent spousal maintenance. Accordingly, we remand to the district court for reconsideration of the amount of permanent spousal maintenance. On remand, the district court shall reopen the record for additional evidence and arguments and shall reconsider all factors relevant to the amount of spousal maintenance, including Judy's present ability to meet her needs independently, as the factors exist at the time of the modification motion.
B.
Judy next argues that the district court erred by finding that she presently is receiving investment income of $27,887 per year. Judy's argument has two parts. First, she contends that the district court erred by using an implied rate of return of four percent, instead of two percent, the rate of return to which the parties had stipulated at the time of dissolution. Second, she contends that the district court erred on the ground that the evidence of Judy's actual investment income is less than the amount found by the district court.
The evidentiary record was incomplete with respect to Judy's investment income because she did not produce all the documents that Mark had requested. She produced her Form 1040 and Form M1 income-tax forms for 2014, 2015, and 2016, which showed investment income of approximately $3,000 per year, but she did not produce the Schedule B forms, which would have provided itemized details of her investment income. Judy's tax returns appear to conflict with a September 2017 monthly statement of her investment account, which showed year-to-date investment income of $7,184. Consequently, the district court was forced to draw inferences from the available evidence. Mark's expert estimated Judy's investment assets *701 (which were not disclosed) by starting with the amount awarded in the dissolution decree, estimating the current balance based on capital appreciation, and arriving at the amount of $697,165. The district court assumed a four-percent rate of return on invested assets, which is the least of the rates provided by Mark's expert, who projected that Judy could generate investment income at a rate of between four and seven percent. Four percent of $697,165 is $27,887.
When awarding spousal maintenance, a district court "must consider all income of the requesting spouse, including income generated from marital property received in the dissolution." Curtis , 887 N.W.2d at 252. When determining the amount of a modified award of spousal maintenance, a district court "shall apply" the relevant factors, including "the financial resources of the party seeking maintenance, including marital property apportioned to the party," as those factors exist "at the time of the [modification] motion." Minn. Stat. § 518A.39, subd. 2(e) ; see also Minn. Stat. § 518.552, subd. 2(a). Accordingly, on a motion to modify spousal maintenance, a district court generally should seek to ascertain each party's present amount of investment income based on evidence submitted by the parties.
In the absence of a more-definitive source of information, the district court did not clearly err by finding that Judy's investment income is $27,887. The district court's premise that Judy has $697,165 in investment assets is supported by Mark's expert's report. The district court's premise that Judy could reasonably earn, and thus is earning, a four-percent rate of return is also supported by the report. Judy is correct that, at trial, counsel for the parties orally stipulated, on the record, to a two-percent rate of return. The oral stipulation did not expressly state that the two-percent rate would govern a future modification motion. Accordingly, the district court was not bound by the two-percent rate when ruling on the motion to modify. In addition, the district court applied the same four-percent rate to Mark's investments, which are slightly greater in amount than Judy's.
Thus, the district court did not err by finding that Judy's investment income is $27,887 per year.
C.
Judy also argues that the district court erred by awarding permanent spousal maintenance in an amount that leaves her with a $1,000 monthly deficit. Her argument is based on the premise that her reasonable monthly expenses are $9,500, which is the amount stated in the district court's memorandum of law. In response, Mark argues that the district court actually found that Judy's reasonable monthly expenses are $8,500 and made its award based on that finding but simply made a typographical error by stating in its memorandum that her reasonable monthly expenses are $9,500.
We agree with Mark on this issue. In the dissolution decree, the dissolution court found, in paragraph 26(c), that Judy's reasonable monthly expenses, exclusive of expenses related to the parties' children, were $8,500. In the order ruling on Mark's motion to modify, the district court described its earlier finding of Judy's reasonable monthly expenses by stating that they totaled $11,000 but that $2,500 was "allocated to the children." In the same order, the district court found that Judy's "monthly budget" is $8,500 "based on Finding of Fact 26(c)." The $8,500 figure is used in the spreadsheet prepared by Mark's expert, which shows that Judy would have neither a surplus nor a deficit if she were to receive spousal maintenance *702 in the amount of $57,420 per year, which is equal to $4,785 per month. It is apparent that the district court determined the modified amount of spousal maintenance based on its finding that Judy's reasonable monthly expenses are $8,500, not $9,500.
Thus, the district court did not err on the ground that it understated Judy's reasonable monthly expenses by $1,000.
II.
Judy last argues that the district court erred by granting Mark's motion for conduct-based attorney fees and awarding him $10,000.
In a proceeding under chapter 518 or chapter 518A of the Minnesota Statutes, a district court "shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding," if certain conditions are present. Minn. Stat. § 518.14, subd. 1 (2018). The attorney fees described in the first sentence of this statute typically are called "need-based fees." See Geske v. Marcolina , 624 N.W.2d 813, 816-17 (Minn. App. 2001). The same statute also provides, "Nothing in this section or section 518A.735 precludes the court from awarding, in its discretion, additional fees, costs, and disbursements against a party who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14, subd. 1. The attorney fees described in the second sentence of the statute typically are called "conduct-based fees." See Geske , 624 N.W.2d at 818-19. Neither party has questioned whether section 518.14 provides a substantive basis for an award of conduct-based fees. For purposes of this appeal, we will assume without deciding that the statute does so. Cf. Anderson v. Anderson , No. A16-2006, order at 3 (Minn. Aug. 6, 2018); id. at D1 (Gildea, C.J., dissenting).
The district court found that Judy "unreasonably contributed to the length and expense" of the modification proceedings in several ways: by refusing to cooperate in the selection of a mediator and to attend mediation, by not providing complete responses to Mark's requests for production of documents, and by not responding to Mark's modification motion until only 24 hours before the hearing on the motion. Based on this conduct, the district court concluded that Judy "obstructed the efficient litigation of [Mark]'s motions without any lawful excuse." The district court noted that Mark incurred attorney fees of more than $22,000 and approximately $5,000 in expert-witness fees. The district court ultimately determined that an award of $10,000 was appropriate.
Judy contends that the district court erred on the grounds that she was not required to participate in mediation and that her failure to produce documents and timely file motion papers did not result in additional work by Mark's attorney. In response, Mark contends that he was required to initiate a process for voluntarily resolving the issue raised by his modification motion and was required to certify to the district court that the parties had complied with the rule. See Minn. R. Gen. Prac. 303.03(c) ; see also Minn. R. Gen. Prac. 310.02. Mark asserts that Judy's attorney delayed the matter for two months before ultimately seeking an exception from the district court. Mark also asserts that he was required to seek leave of the district court to depose Judy after she failed to respond to his discovery requests. Mark further asserts that Judy's untimely service and filing of her responsive motion papers required a second hearing on his motion, which both delayed the resolution of the motion and increased his attorney fees.
*703 The record reveals that the parties' attorneys discussed the possibility of mediation before Mark filed his modification motion and that Judy's attorney delayed the matter for several months before writing to the district court. The record also reveals that Mark served discovery requests in May 2017 and that Judy did not respond. The district court commented that Judy "was very untimely" by filing her written response to Mark's motion one day before the motion hearing, which caused the district court to keep the record open to allow Mark to depose Judy and to supplement the motion record. We conclude that the district court sufficiently identified particular ways in which Judy "unreasonably contribute[d] to the length or expense of the proceeding" and awarded an amount of attorney fees that is reasonable under the circumstances. See Minn. Stat. § 518.14, subd. 1.
Thus, the district court did not abuse its discretion by awarding Mark $10,000 in conduct-based attorney fees.
DECISION
The district court erred by attributing employment income of $50,419 to Judy when determining the amount of the modified award of permanent spousal maintenance. The district court did not err by finding that Judy has investment income of $27,887, by basing its modified award of permanent spousal maintenance on Judy's reasonable monthly expenses of $8,500, or by granting Mark's motion for conduct-based attorney fees and awarding him $10,000. We remand to the district court for reconsideration of the amount of permanent spousal maintenance.
Affirmed in part, reversed in part, and remanded.

A treatise explains that, if a district court orders rehabilitative maintenance, "the appropriate educational expectations should be established, and the probable costs of the education should be listed individually." 14 Minnesota Practice-Family Law § 10:16, at 427 (2018-2019 ed.). The treatise further explains, "These findings can be invaluable in the future if the obligee fails, intentionally or unintentionally, to rehabilitate [himself or] herself within the expectations of the order." Id. We acknowledge that this excerpt likely relates to an award of temporary spousal maintenance. But the same principles may apply to an award of permanent spousal maintenance if a district court imposes on the recipient an obligation to make reasonable efforts to increase his or her earning capacity.